Good morning, Illinois Appellate Court, 1st District Court is now in session, the 2nd Division, the Honorable Justice Nathaniel House presiding, case number 23-0413 Donald Todd Vandermyde v. Cook County Good morning, my name is Nathaniel House. I'm a judge of the Appellate Court and presiding over this case with me are Justices Mark McBride and Cynthia Cobbs. This case is being heard via zoom, and we'll follow this procedure will allow each side in turn to have 10 minutes of up to 10 minutes of uninterrupted argument, after which we will ask questions. The appellant will be given a few minutes for rebuttal. Does anyone have any questions about how we're going to proceed. Okay, there's no questions. Who represents the appellant. In this case, please. Ms. Hardiman, and who represents the appellee. I do, Your Honor, Jessica Wasserman. Thank you. Ms. Hardiman, you may proceed when you're ready. May it please the Court, Kate Hardiman for Plaintiff's Appellants. At its core, this case is not about firearms. Rather, this case is about whether governments can single out and discriminate against certain constitutional rights for special taxation. When faced with that question, the United States Supreme Court and the Illinois Supreme Court have repeatedly held that the answer is no. To take just a few examples, the Supreme Court struck down a $1.50 poll tax in Harper and a 4% tax on paper and ink used by a newspaper in Minneapolis Star Tribune. The Illinois Supreme Court similarly struck down a $10 tax on marriage licenses in Boynton. The teaching of all of these precedents is that no constitutional right can be singled out for special taxation. This principle must apply equally to the Second Amendment, and it renders Cook County's firearm and ammunition taxes invalid. Plaintiffs prevail for a simple reason on appeal. The basis for the lower court's opinion is no longer good law. This court's decision in Gun Save Life 1 has been abrogated in relevant part twice over, first by the Illinois Supreme Court in Gun Save Life 2 and by the U.S. Supreme Court in Bruin. I'd like to start with Gun Save Life 2 from the Illinois Supreme Court. That case held that firearm and ammunition taxes burden a fundamental constitutional right, directly reversing the contrary holding of Gun Save Life 1. Now, to be sure, Gun Save Life 2 interpreted the uniformity clause of the Illinois state constitution. However, the court's holding that firearm and ammunition taxes burden a constitutional right was integral to its holding that the taxes violated the uniformity clause. In paragraph 28, for example, the Illinois Supreme Court, I'm sorry, in paragraph 36, the court explained that where a tax classification directly bears on a fundamental right, the government must establish a closer tie between the tax classification and the object of the legislation. To pass scrutiny in that instance, in other words, where the tax burdens a fundamental constitutional right, we hold that the tax classification must be substantially related to the object of the legislation. The Illinois Supreme Court's ruling in Gun Save Life 2, therefore, leaves nothing left of Gun Save Life 1, and the lower court's reliance on Gun Save Life 1 was improper. Let's also consider the U.S. Supreme Court's decision in Bruin. Bruin invalidated the old test that was two steps and that the Gun Save Life 1 court employed. The first step that is now invalid is whether text and history support the restriction. As Bruin put it, figuring out the original scope of the right based on its historical meaning. And then, of course, the second step under the old framework was how close the law comes to the core of Second Amendment rights and the severity of the law's burden on that right. Now, Bruin altered and overruled the second step of that framework. The Bruin test now asks whether plaintiff's conduct falls within the plain text of the Second Amendment. If plaintiffs are Americans who seek to keep and bear arms in public for lawful purposes, this step is satisfied. There is no longer any historical analysis in the first step. If the first step is satisfied, the burden shifts to the government. The government must then justify its restriction by pointing to representative, relevantly similar analogs with a focus on the founding era. This piece is all about history. Now, this holding in Bruin also squarely abrogated Gun Save Life 1 holding. This is because in paragraph 57 of Gun Save Life 1, it is clear that this court applied the now invalid two-pronged test and specifically the second prong of that test. This is so because the court reasoned that taxes on firearms and ammunition do not implicate, quote, the core of the Second Amendment because they do not restrict the ownership of firearms and ammunition. Excuse me, Ms. Hardiman, I know I promised you 10 minutes of uninterrupted presentation. But here, did you file a motion for summary judgment below or a motion for judgment of any type in your behalf? Your Honor, the decision below is decided on a motion to dismiss, I believe. So we're not even at the summary judgment stage. We lost the motion to dismiss. So what was the basis of the motion to dismiss was the first case, Gun Save Lives case. And that doesn't apply, but you're arguing. That's correct, Your Honor. The court below held that these taxes do not implicate the Second Amendment at all. And our position is that that holding cannot be squared with the Illinois Supreme Court's ruling in Gun Save Life 2 and the United States Supreme Court's decision in Bruin. There are some other bases raised by the state for dismissing this claim. And what about those issues? Yes, Your Honor. So we believe that this court could decide on the issues that I've discussed alone. However, the other four issues are briefed and are before you. So we do think it's important to provide guidance to the lower court. The county raised four other bases for dismissal. So the first is that plaintiffs are seeking an advisory opinion. And this is simply not the case because plaintiffs are seeking damages from the payment of an unconstitutional tax. We're not seeking to invalidate the old version of the ordinance that Gun Save Life 2 already dealt with. Rather, we're seeking, just as under Kerry v. Pifus in the United States Supreme Court, financial compensation for the unconstitutional taxes that we paid. The county also raises a number of arguments about pleading and whether or not we have stated a claim that the taxes infringe our Second Amendment rights. And here, Your Honor, most of the debate between the parties is about the meaning of the word infringe. And we have cited to you two founding-era dictionaries, as well as decisions from two federal appellate court of appeals that hold that infringe means not, as the county argues, to destroy, but rather to hinder. So any tax hinders the exercise of, here, Second Amendment rights because it makes that right more expensive to exercise. Also, the county argues that plaintiffs can't challenge this tax through Section 1983. Now, this argument can be easily dismissed. The county invokes the Tax Injunction Act, but that plainly, on its face, only applies to restrain federal courts from interfering with state taxation systems. It leaves a remedy in state court, and obviously we are proceeding in front of you in state court. Lastly, the county argues that the Supreme Court's fee jurisprudence supports their position, not plaintiffs. However, those cases that the county cites all support plaintiffs. This is because they only hold that fees that go to defraying the cost of a licensing scheme are permissible. Now, two problems with that here. We don't have a fee. We have a tax. The Illinois Supreme Court held in paragraph 5 of Gun Save Life 2 that this is plainly a tax levied under the county's taxing authority. And also, the proceeds here are not going to defraying any administrative costs with the scheme. This is a revenue-raising tax that is going into to fund the county's objectives. So, those precedents, to the extent that they're even applicable, support plaintiff's position. I'm happy to address any further questions your honors have. Any questions? Okay, I don't have any questions either. Ms. Wasserman, you may proceed. Thank you. May it please the court. My name is Jessica Wasserman and I represent the Cook County defendants. This court should affirm the decision of the circuit court for three reasons. First, plaintiffs seek an advisory opinion that the already invalidated pre-amendment ordinance violates the Second Amendment. Second, the circuit court correctly determined that this court's prior decision in Gun Save Life v. Ali mandated dismissal. And third, even if Gun Save Life 1 is no longer good law, plaintiffs have failed to state a claim that the ordinance implicates the plain text of the Second Amendment. So, first, plaintiffs improperly seek an advisory opinion. They argue an oral argument that they don't seek an advisory opinion because they seek damages. However, they do not address the defendant's argument that they could have sought damages under a uniformity clause claim. The pre-amendment version of the ordinance was already struck down under the uniformity clause claim. And just because the plaintiffs waived that claim here doesn't create an active controversy with regard to the Second Amendment. So only the post-amendment version of the ordinance is at issue today. Next, this court's Second Amendment analysis in Gun Save Life 1 remains good law. The Gun Save Life 1 court's Second Amendment analysis is entirely consistent with Bruin. There, the court explained that its analysis involves a textual and historical inquiry to determine whether the conduct was understood to be within the scope of the right at the time of ratification. This is verbatim what the court requires. Further, in determining whether the ordinance fell within the scope of the Second Amendment, the Gun Save Life 1 court held that the challenge taxes do not restrict the ownership of firearms or ammunition. And in support of that holding, the court noted that the taxes weren't prohibitive or exclusionary. This is entirely consistent with Bruin's blessing of shall-issue regimes. They noted that those kinds of regimes are presumptively constitutional, while recognizing that if they involve exorbitant fees or lengthy waiting times such that it had the effect of prohibiting someone's ability to keep and bear arms, then that might open up to a constitutional challenge. And further, that analysis in Bruin from Bruin's footnote 9, this court has already held that that is part of the plaintext analysis. In People v. Gun, this court, relying on Bruin, concluded that it didn't need to engage in a historical analysis because a $150 fee wasn't exorbitant. And the same is true here. Implaintors have done nothing to distinguish Gun from this case. Gun Save Life 2 in the Illinois Appellate Court also didn't overturn the Second Amendment analysis in Gun Save Life 1. In fact, the Illinois Supreme Court in Gun Save Life 2 explicitly stated that it didn't need to consider the federal constitutional claims. Moreover, the plaintiffs in that case actually asked the Illinois Supreme Court for a petition for rehearing on the Second Amendment issue, which the court denied. The court made explicitly clear that it didn't wish to speak on the Second Amendment issue. And even if that weren't enough, the Supreme Court, the Illinois Supreme Court's recent decision in Calkins v. Pritzker, offers further guidance that not everything that burdens the Second Amendment necessarily implicates the plaintext. The Calkins court explicitly held that a Second Amendment claim was waived in part because equal protection and the Second Amendment are analyzed under different standards. And in support of that, the court, relying on Bruin, explained that plaintiffs needed to establish that regulated items fell within the category of bearable arms that are commonly used for self-defense today. In their reply brief, plaintiffs tried to discount Calkins entirely simply because it dealt with waiver, but they overlooked that those substantive holdings were integral to the waiver analysis. And as such, they bind this court in its decision today. But even if Gun Save Life 1 is no longer good law, plaintiffs have failed to state a claim that the ordinance implicates the plaintext of the Second Amendment. The Second Amendment presents several conditions for plaintext coverage, including whether the regulated conduct infringes on plaintiffs' right to keep and bear arms. Plaintiffs here have implicated that the ordinance affected their conduct at all, let alone infringed upon. Their assertion that anything that even touches on the Second Amendment is presumptively an infringement is simply inconsistent with Supreme Court case law. For instance, as I've mentioned, the Supreme Court's shall issue discussion in Bruin has provided clear guidance that infringement requires more than a simple processing delay, firearms training, or the imposition of some kind of administrative fee. Similarly, Heller made clear that laws imposing conditions and qualifications on the commercial sale of arms were presumptively constitutional. In their reply brief, plaintiffs argue that the taxes must infringe on their ability to keep and bear arms simply because they couldn't have purchased their desired weapons if they hadn't paid the taxes. But that's also true of an ordinary sales tax and allowing a purchase price to be charged at all. At oral argument, plaintiffs argue that the extent of the brief is irrelevant, and instead they try to piece together a host of case law from other constitutional contexts to create a rule that the dollar amount doesn't matter, and if a tax singles out a constitutional right for special taxation, it's per se unconstitutional. And as a preliminary matter, this contradicts what they argued in their opening brief, where they argued that First Amendment jurisprudence was, quote, rendered inapplicable to the Second Amendment by Bruin, which sets out a single standard for applying the Second Amendment. They then switch gears in their reply brief and cite a variety of case law in other contexts to try to create this rule. But even if this court considers the cases that the plaintiffs cite, they're inopposite. At oral argument, the plaintiff has brought up Harper v. Virginia State Board of Elections, which involved a poll tax in the Jim Crow era. But that case was decided on equal protection grounds, and the issue there was that the tax caused invidious discrimination. Here we have no kind of discrimination claim or anything even remotely similar. Further, the Supreme Court has consistently held that the First and Second Amendment are subject to different kinds of restrictions. For instance, whereas the Supreme Court has consistently held things like prior restraints are presumptively unconstitutional in the First Amendment context, Bruin and Heller have made clear that prior restraints, background checks, things like that, are presumptively constitutional in the Second Amendment context. And I would open it up if the court has any questions at this time. All right. Any questions? I have a question. So would you agree that at the trial court level, the court, maybe I'm wrong, but did the court dismiss this? I'm sorry, the court dismissed it based solely on the judge's belief that she had to follow Gun Saved Lives for what? So the judge noted that, yes, she was bound by Gun Saved Lives 1, but she also went on to explain that Gun Saved Lives 1's reasoning was consistent with Bruin. And, you know, in this case, the plaintiff hadn't done anything to distinguish that case and showed that it implicated the scope of the Second Amendment. But she did not address any of your other arguments, did she? No, Judge, not in her written order. And normally, if there's a stated claim on a motion to dismiss, if a claim could be stated. Well, all right, let's go back to if she is wrong that Gun Saved Lives 1 has any life at all and she was bound to follow it, if she erred as a matter of law, we could send this case back simply because she erred in her determination, couldn't we? Well, Judge, I would note or Justice, I would note that this court can affirm on any ground. No, I understand that. But the judge in this case relied on a sole ground. And oftentimes when that occurs and that ground is wrong and the parties haven't had the ability to argue why your other reasons for dismissal are incorrect, that they haven't even really had a hearing in the trial court. Would you agree? I mean, I know of cases where we've done that. But my question to you was the fact that she relied on a case that perhaps many would say is no longer law was her sole basis for dismissing the complaint, wasn't it? Well, so, Judge, I'll note that there was oral argument on the motion to dismiss where all of these arguments were raised. Yeah, well, I guess my question isn't clear enough. The judge didn't decide this case on any other ground except that she was bound to follow first district precedent. Is that correct or not? Judge, I would say that's correct. But the judge also explained that the analysis that the first district did apply to people for us in this case. But that's because she held that that case is still good law. That is true. Yes. OK. All right. All right. Well, in any event, and you're saying it's advisory opinion and yet they're not asking to have any law declared unconstitutional. They're asking for their money back for paying these fees. Is that right? Well, Judge, their damages claim is relies on the Second Amendment being declared as unconstitutional because they only bring a Second Amendment claim here. OK, but they're looking for money, correct? Yes. This wasn't a declaratory judgment, was it? So, yes, I believe they asked for both damages and declaratory judgment. But the court, well, the court never reached that anyway. All right. That's all I have. If the judge is wrong about. In what case do you suggest that actually would hold that gun saves lives? One is still good law in light of gun saves lives, too, by our Supreme Court, which we are bound to follow. Yes. Well, and I would point I believe in our brief, we cited the Williams case, which states that an opinion that is reversed but not vacated still retains some precedential value. And the fact that the Supreme Court explicitly said it was only addressing the uniformity clause issue and not touching the Second Amendment means that the first district's reasoning with regard to the Second Amendment still retains some precedential value. OK. And then enlighten me what will how Williams actually supports the argument you're making. The Supreme Court vacated. Reversed. And basically, I don't see that that case has any precedential value, but explain to me how the Williams case really supports what you're trying to argue. So it draws the analogy that, you know, there's a difference between vacating and reversing in part. And because the court didn't vacate in part, did they? They reversed in part. They didn't vacate in part. No, no, it was just reversed in part. So, you know, whereas vacating would cause, you know, no precedential value. And didn't the court say that it's it's reversing under the uniformity clause didn't need to reach? Correct. The federal constitutional claim, which that that's supported by well-established precedent, isn't it? Yes, Judge, the court. So I'm not sure why I understand this Williams case you're citing. Recall the facts and tell us why. Here's the difference, I think. And I want to ask this question. Reversed in part means part of the case is left intact. For example, don't we have a different case if the Supreme Court in Gun Saves Lives 2 had said we agree with the Second Amendment finding of the appellate court, but we all but we find that the uniformity, therefore we reverse, you know, then they would be bound by it. But here they said we're not going to even consider the second. It was reversed in whole. And the distinction is a reversed case is different from a case that's reversed in part. Isn't that true? Yes, Judge, and, you know, similar to what you said, the fact that's important here is that nothing was done to disturb that Second Amendment analysis. So while it might not retain the same presidential value, nothing's been done. I mean, it's just the court said it was never it needed not. It did not need to reach the Second Amendment argument because the statute was unconstitutional under the uniformity clause. And there was no reason for the court to reach a federal constitutional issue when it had already found under the state constitutional clause that this law was unconstitutional. So I don't know that there's anything left, but and I'm not sure I understand your argument still. So, yes, and it's just it's our position that nothing has been done to disturb the analysis there. So even if the case doesn't have binding authority, it's still the the analysis is completely consistent with Bruin. It's completely consistent with doing a plain text analysis. And even if the court redid the plain text analysis here, like our last point, we believe that it would come to the same conclusion based on that same reason. OK. But it carried no more weight than just if a lawyer had made that same analysis. I mean, it was not binding. So, Judge, again, it's just our position because it wasn't disturbed, but we would rest on our briefs on that point. All right. Any other questions? I don't have any. I don't. All right. Miss Hardman, you make a brief rebuttal. Thank you, Your Honor. So just picking up on Gun Save Life one, our contention is that it has zero presidential value. It was reversed in whole. Gun Save Life two reversed a grant of summary judgment that the district court had affirmed and remanded for entry of the opposite summary judgment. Under People v. Brown from the Illinois Supreme Court, it effectively there took the place of the lower court and granted summary judgment for plaintiffs. Therefore, we think you can decide this case on the ground alone, that there's nothing left of Gun Save Life one. I want to respond to the contention that Gun Save Life one is consistent with the plain text analysis of Bruin. This just totally misses the point that Gun Save Life one was a step two analysis. It discussed the core of Second Amendment rights and it found that the firearm and ammunition taxes don't impose a substantial burden on Second Amendment rights. Those are indisputably step two inquiries. They are not step one inquiries under the old test that Bruin invalidated. I also want to briefly address the county's appeal to shall issue regimes and exorbitant fees. And this comes from footnote nine of Bruin. So those cases all dealt with licensing fees, not a tax levied pursuant to the taxing authority, which is what we have here. So footnote nine is entirely not applicable to this case and these facts. Moreover, Gun, which the county also cites, dealt with the Illinois licensing fee. Also not applicable for the same reason. Here we have a revenue raising tax. And I do want to say I misspoke earlier. This is not a fee case. It is a tax case. And there is a distinction, as you've already argued and given us the reasons why. So I misspoke. It's not your honor. Thank you, Your Honor. Also on on Calkins, which is from the Illinois Supreme Court. And it's important to note that in that case, plaintiffs expressly disclaim a Second Amendment claim. So that case stands only for the proposition that there may be no burden on Second Amendment rights when plaintiffs do not argue that there is a burden. It does not support the county's position here. On the stating a claim arguments, just briefly, this is not a qualification on the commercial sale of arms under Heller. And that is so for two reasons. This does not fall into the language about a sale because it's levied on the purchaser, not on, say, the firearms dealer. We think that language from Heller is meant to regulate firearm dealers who need to get a license in order to sell arms. It wouldn't fall or encompass purchasers as we have here. Second, Heller required that any of those qualifications or conditions must be, quote, long standing. And under Bruin, whether or not something is long standing is an argument about whether it is deeply rooted in history and tradition. Therefore, that language from Heller actually supports plaintiffs position that the county needs to ground its tax in history. And it has not done that below. It has not even attempted to brief history to this court. And so that language from Heller is just not applicable here. And lastly, the county two final points, your honors, the county argues that this tax is akin to a sales tax. That is just plainly not true. Plaintiffs would not challenge a generally applicable sales tax. Here we have a tax that singles out a constitutional right for special taxation. And therefore, the precedents of Harper and Minneapolis Star Tribune are directly on point. The principle, even though they were in different constitutional contexts, is the same. Constitutional rights cannot be singled out for special special taxation. If that is the case for First Amendment rights, it must be the case for Second Amendment rights. After all, the power to tax is the power to destroy. As Chief Justice Marshall once recognized, it opens Pandora's box for this court to allow government to single out a constitutional right. It disfavors for special taxation. If this tax is OK, the right to counsel can be taxed the right to any other constitutional right that this court favors could be taxed as well. This court should reverse the judgment below and remand for further proceedings. Thank you for your time today. Thank you very much. The case was well briefed, well argued. We will take it under advisement and a decision will be entered in due course. Have a great day. Thank you. Thank you. Thank you. Hold on just a second.